[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-16277
Non-Argument Calendar
_____

D.C. Docket No. 1:15-cr-00104-SCJ-AJB-2


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WOODROW ANDREW CLARK,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(October 12, 2017)

Before TJOFLAT, WILLIAM PRYOR and FAY, Circuit Judges.

PER CURIAM:

Woodrow Andrew Clark appeals his conviction for conspiracy to distribute heroin.  We affirm.

## I. BACKGROUND

On March 24, 2015, Clark and his codefendant, Robert Elie, were charged with conspiring to possess heroin with the intent to distribute, in violation of 21 U.S.C. §§ 841 and 846 (Count 1), and possessing heroin with the intent to distribute, in violation of 21 U.S.C. § 841 (Count 2).  While Elie pled guilty in January 2016, Clark proceeded to a jury trial in June 2016.

Department of Homeland Security ("DHS") Special Agent Steven Ledgerwood testified that, on March 9, 2015, he was on duty and learned of a potential drug transaction occurring at the Camden St. Clair Apartments.  Agent Ledgerwood was investigating a Mexican cartel that was sending large quantities of drugs to the metro-Atlanta area.  While monitoring the area where he believed the drug transaction would occur, Agent Ledgerwood observed a bright orange Chevrolet truck.  He saw a black male exit the truck and walk through the breezeway leading to the suspect apartment where DHS believed the drugs were being kept.  He later saw the same orange truck pull back into the complex.  He also observed a black Infinity, which he believed to be carrying drugs, enter the complex.  Agent Ledgerwood also read into the record a stipulation that Clark previously had been convicted of selling heroin on two prior occasions in Florida.

2

DHS Agent Charles Engle also testified at trial.  Agent Engle testified that he was assigned to the organized crime and drug task force and had participated in physical surveillance in ongoing investigations.  When the government began questioning Agent Engle about countersurveillance, Clark objected that Agent Engle was providing expert testimony and the government had failed to provide the requisite notice.  The district court stated that Agent Engle could not "get into countersurveillance," but he could explain why law enforcement was watching the apartment.  R. at 887.  Clark argued that Agent Engle could testify regarding what he observed, but that he could not provide his opinion that, based on his experience, he believed Clark was conducting countersurveillance.  The court noted that such an opinion would be based on specialized knowledge, as a person without law-enforcement training would not draw the same conclusion.  The court permitted the testimony to continue but instructed the government not to get into testimony regarding what actions constitute countersurveillance.

Agent Engle resumed his testimony.  He stated that he had participated in surveillance of the Camden St. Clair Apartments on March 9, 2015.  He was in a parked car with heavily tinted windows on the top floor of a parking deck and could see the entrance to the breezeway leading to the suspect apartment.  An orange truck parked near him, even though there were available parking spaces near the entrance of the suspect apartment.  The truck faced the breezeway, just as

3

Agent Engle's vehicle did.  Agent Engle later identified Elie as the driver and Clark as the passenger.  Agent Engle testified that Clark and Elie remained in the truck for about ten minutes, then Elie exited the truck and Clark handed Elie a red bag through the truck window.  Elie walked into the breezeway toward the apartment.  Clark remained in the truck for five minutes and then drove out of the complex.  About ten minutes later, Clark returned in the truck and parked in the same location as before.  Clark remained in the driver's seat and looked around.  About ten minutes later, Clark again drove out of the complex.

The government asked Agent Engle why he believed the truck might be involved in the drug activity.  Clark renewed his objection; the court noted that it had already ruled.  Agent Engle testified that, at that point, he believed the orange truck was involved in the transaction because a person in the truck had walked to the suspect apartment, the truck had entered and left the apartment complex, and the driver had not exited the truck.  Agent Engle also observed the black Infinity, which was believed to be delivering narcotics to the apartment, enter the complex. He observed a Hispanic male, carrying a package, exit the Infinity and approach the suspect apartment.  Agent Engle saw the orange truck return to the complex 15 minutes later.  The truck approached the apartment; Elie exited the breezeway with the red bag and entered the passenger side of the truck. Agent Engle stated that, once Elie was inside, the truck began to slowly leave the complex.

4

Agent Engle testified that he began to follow the truck but could not follow Clark out of the complex without being too noticeable.  He later joined other agents in the pursuit of the orange truck and eventually caught up to the truck.  Agent Engle watched law-enforcement officers attempt to conduct a traffic stop.  The truck began to flee; later the driver and passenger began to flee on foot.  When agents later searched the truck, they found the red bag containing $24,000, 2 kilograms of heroin, and 3 cell phones.  Agents also seized two cell phones belonging to Clark from the truck.  The agents were able to retrieve information from one phone and found evidence that Clark used a messaging app.

During a recess, the government provided the district court and defense counsel with several cases in which this court had permitted lay opinion testimony from a law-enforcement officer that included opinions formed based on law-enforcement experience.  The district court clarified that, while this court has held that narcotics agents may testify about the significance of certain conduct, the government had failed to provide any notice of its intent to use Agent Engle as an expert; thus, he could not testify as to any specialized knowledge.

Agent Engle published to the jury the seized heroin and stated the amount of heroin was approximately 18,000 "hits."  R. at 943.  Agent Engle testified that he believed that a narcotics deal was occurring in the suspect apartment.  Because Clark passed open parking spaces closer to the apartment and continued looking

5

around the complex, Agent Engle believed that Clark had been acting as a lookout. Agent Engle testified that he believed Clark was involved in a drug transaction and this had heightened his suspicion of the truck. Additionally, he believed that the driver was driving slowly to see whether anyone was following. At the conclusion of Agent Engle's testimony, the court noted for the record that it had ruled that his testimony was lay opinion testimony because it was based on his perception.

DHS Agents Jonathon Malloy and Thomas Cadwallader also testified. On March 9, 2015, Agent Malloy was at a gas station across the street from Camden St. Clair Apartments and observed the orange truck cut through the gas station parking lot to avoid waiting to make a left turn at a red light. Agent Cadwallader testified that he saw the orange truck leaving the apartment complex and began to follow approximately 200 yards behind. He was unable to continue following the truck when it quickly changed lanes.

Georgia State Patrol Trooper Doug Allen testified that he was called to assist DHS with a traffic stop involving narcotics on March 9, 2015. He followed the orange truck for several miles and eventually determined that the driver failed to maintain his lane and was not using his headlights while it was raining and that the truck's brake lights were not properly working. After observing the traffic violations, Trooper Allen initiated a traffic stop. Trooper Allen stated that the truck began to slow but did not come to a complete stop. He explained that, in his

experience, when a person slows his vehicle but does not stop completely, he is considering fleeing from the police. He then stated that the driver fled the truck on foot and identified Clark as the driver. He chased Clark and was able to catch him, though he had to use his Taser to subdue and arrest Clark.

The jury found Clark guilty as to Count 1 and not guilty as to Count 2. The district court sentenced Clark to 156 months of imprisonment, to run concurrently to a state sentence that previously had been imposed. The court also sentenced Clark to a five-year term of supervised release. On appeal, Clark argues that the district court erred by permitting a law-enforcement agent to testify as a lay witness that, based on Clark's behavior, the agent believed Clark was acting as a lookout during a drug transaction. Clark asserts that, because the agent's testimony was based in part on his experience as a law-enforcement officer, his statements were expert testimony and required notice.

## II. DISCUSSION

We review a district court's evidentiary rulings for abuse of discretion. *United States v. Frediani*, 790 F.3d 1196, 1199 (11th Cir. 2015). Moreover, even if a district court abused its discretion, we will only reverse if the error was not harmless. *Id.* at 1200. An error is harmless unless, in light of the record, there is a reasonable likelihood that the error had a substantial influence on the outcome of the proceedings. *United States v. Bradley*, 644 F.3d 1213, 1270 (11th Cir. 2011).

The Federal Rules of Evidence permit lay witnesses to give opinion testimony if the testimony is "(a) rationally based on the witness's perception; (b) helpful to clearly understating the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of [Federal] Rule [of Evidence] 702." Fed. R. Evid. 701. Rule 702 permits opinion testimony from a witness who is "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. If the government intends to call an expert witness at trial, the government must, upon request, provide the defendant with a written summary of any expert testimony the government intends to use in its case-in-chief. Fed. R. Crim. P. 16(a)(1)(G). No such notice is required for lay opinion testimony. *See id.*

To be rationally based on the witness's perception and thus qualify as lay opinion, testimony must be based on "first-hand knowledge or observation." *United States v. Marshall*, 173 F.3d 1312, 1315 (11th Cir. 1999). We have held that the mere fact that a witness's perception is based in part on his past experiences does not render it an expert opinion. *United States v. Novaton*, 271 F.3d 968, 1008 (11th Cir. 2001) (holding that, at least prior to a 2001 amendment of Rule 701, a district court did not abuse its discretion by permitting agents involved in a case to give opinion testimony based on their perception and experiences as law-enforcement officers); *see also Tampa Bay Shipbuilding &*

8

*Repair Co. v. Cedar Shipping Co.*, 320 F.3d 1213, 1223 & n.17 (11th Cir. 2003) (holding that lay witnesses, including police officers, may testify based on particularized knowledge garnered from experience in a particular field and this testimony is not "specialized knowledge" within the meaning of Rule 702, and finding no basis to determine that *Novaton* required a different finding after the amendment to Rule 701).

Contrary to Clark's argument on appeal, we have recognized that a law-enforcement officer may testify based on knowledge gained from his experience in a particular field, and that testimony does not necessarily qualify as "specialized knowledge" within the meaning of Rule 702. *See Tampa Bay Shipbuilding*, 320 F.3d at 1223 & n.17; *Novaton*, 271 F.3d at 1008. The district court specifically prevented Agent Engle from testifying about Clark's actions based on any specialized knowledge; the government elicited testimony only as to Agent Engle's perception based on his observation of Clark's actions on the day of the heroin transaction. Agent Engle did not testify on direct examination regarding what "countersurveillance" is or make any general observations regarding conspirators in a drug ring. Because Agent Engle's testimony was based on his perception of Clark's actions, it was admissible as lay opinion testimony under Rule 701. *See* Fed. R. Evid. 701. The district court did not clearly err in permitting the agent to

9

testify as a lay witness that, based on his observations, he believed that Clark was acting as a lookout during the drug transaction.

Furthermore, even if the district court did abuse its discretion in admitting Agent Engle's opinion testimony that Clark was acting as a lookout, any error was harmless. *See Bradley*, 644 F.3d at 1270. Significant evidence, aside from Agent Engle's opinion that Clark was acting as a lookout, showed that Clark conspired to possess with intent to distribute heroin.

**AFFIRMED.**